**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF GEORGIA**
**(ATLANTA DIVISION)**

| | |
|---|---|
| **UNITED STATES SECURITIES AND EXCHANGE COMMISSION,**<br><br>**Plaintiff,**<br><br>**v.**<br><br>**LAMAR DEANTE FLETCHER,**<br><br>**Defendant.** | **Civil Action No. _________**<br><br>**JURY TRIAL DEMANDED** |

# COMPLAINT

Plaintiff, the United States Securities and Exchange Commission ("Commission" or "SEC"), alleges the following:

## OVERVIEW

1. From approximately April 2021 through November 2024, Defendant Lamar Deante Fletcher ("Fletcher" or "Defendant") operated a scheme to defraud investors when selling more than $4.25 million in securities to approximately 100 people nationwide.

2. In furtherance of the scheme, Fletcher created the illusion that he owned and operated a successful real estate investment business.

3. He then solicited people to invest in real estate development projects, telling investors that their investments would be used to acquire and/or develop real property in furtherance of those projects.

4. In reality, Fletcher did not use investor funds in connection with any real estate development, but largely to fund his personal lifestyle.

5. When, inevitably, Fletcher could not deliver the profits he promised, he extended his scheme by using money from later investors to pay supposed returns to earlier investors, in classic Ponzi fashion.

## VIOLATIONS

6. Fletcher's misconduct, summarized above and detailed below, violated the antifraud provisions of federal securities laws.

7. Specifically, Fletcher (1) employed devices, schemes, and artifices to defraud investors in the offer and sale of securities, (2) obtained money by means of material misrepresentations and omissions, and (3) engaged in acts practices and courses of business which operate as a fraud, all in violation of Sections 17(a)(1), 17(a)(2), and 17(a)(3) of the Securities Act of 1933 ("Securities Act") [15 U.S.C. §§ 77q(a)(1), 77q(a)(2), and 77q(a)(3)].

8. Also, Fletcher (1) employed devices, schemes, and artifices to defraud investors in connection with the purchase and sale of securities, (2) made material misrepresentations and misleading omissions, and (3) engaged in acts, practices,

and courses of business which operate as a fraud, all in violation of Section 10(b) of the Securities Exchange Act of 1934 ("Exchange Act") [15 U.S.C. § 78j(b)] and subsections (a), (b), and (c) of Rule 10b-5 thereunder [17 C.F.R. §§ 240.10b-5(a), (b), and (c)].

## JURISDICTION AND VENUE

9. The Commission brings this action pursuant to Sections 20 and 22 of the Securities Act [15 U.S.C. §§ 77t and 77v] and Sections 21(d) and 21(e) of the Exchange Act [15 U.S.C. §§ 78u(d) and 78u(e)] to enjoin Defendant from engaging in the transactions, acts, practices, and courses of business alleged in this complaint, and transactions, acts, practices, and courses of business of similar purport and object, for disgorgement plus prejudgment interest, for civil penalties, and for other equitable relief.

10. This Court has jurisdiction over this action pursuant to Section 22 of the Securities Act [15 U.S.C. § 77v], Sections 21(d), 21(e), and 27 of the Exchange Act [15 U.S.C. §§ 78u(d), 78u(e), and 78aa], and 28 U.S.C. § 1331.

11. Defendant, directly and indirectly, made use of the mails, and the means and instrumentalities of interstate commerce in connection with the transactions, acts, practices, and courses of business alleged in this complaint.

12. Certain of the transactions, acts, practices, and courses of business constituting violations of the Securities Act and the Exchange Act occurred in the Northern District of Georgia. In addition, Defendant resides in this judicial district.

13. Defendant, unless restrained and enjoined by this Court, will continue to engage in the transactions, acts, practices, and courses of business alleged in this complaint, and in transactions, acts, practices, and courses of business of similar purport and object.

## THE DEFENDANT AND HIS COMPANIES

14. Lamar Deante Fletcher, age 32, is a resident of Georgia. He has never been formally associated with any entity registered with the SEC.

15. As part of his scheme to defraud investors, Fletcher formed two companies: Fletchers Capital Group, LLC ("Fletchers Capital") and Fletchers Multi-Family Real Estate Partners Fund, LP ("Fletchers Multi-Family") (collectively "Fletcher's companies" or "the companies").

16. Fletcher formed Fletchers Capital in March 2021 as a Georgia limited liability with himself as the sole member.

17. Fletchers Capital is now defunct. It was administratively dissolved on September 19, 2025, having never been registered with the Commission in any capacity.

18. Fletcher formed Fletchers Multi-Family in December 2022 as a Delaware limited partnership. Fletcher alone controlled the company.

19. Like Fletcher's Capital, Fletchers Multi-Family is now defunct. Its registration with the State of Delaware was cancelled on June 1, 2025, having never been registered with the Commission in any capacity.

## FACTS

20. In the spring of 2021, Fletcher needed money.

21. Having earned a degree in financial planning in college, he was familiar with the vocabulary of finance.

22. Having become aware of communities of people interested in real estate investment, Fletcher began appearing in such groups on online social media platforms including Facebook.

23. To participants in such communities and other prospective investors, Fletcher presented himself as an experienced real estate investor, touting his companies as actively engaged in profitable real estate development projects.

24. Fletcher further claimed that he and his companies purchased real estate at below-market value, which allowed them to generate profits.

25. In PowerPoint presentations that he used in sales pitches, Fletcher represented that his companies were experienced and successful.

26. For example, the following is a slide from a deck that Fletcher used to pitch an investment through Fletchers Capital:




27. In the same presentation, Fletcher represented that Fletchers Capital had a "30+ deal track record of success."

28. Fletcher made similar claims for Fletchers Multi-Family including on the following slide, created for a pitch to investors:




29. In truth, neither Fletcher, Fletchers Capital, nor Fletchers Multi-Family engaged in any meaningful real estate acquisitions or other business operations.

30. Fletchers Capital and Fletchers Multi-Family had no assets under management and only *de minimus* revenue apart from the proceeds of their investment sales.

31. Fletchers Multi-Family had no structure designed to lower the risk to passive investors.

32. Moreover, Fletchers Multi-Family did not own any property, nor did it have a "1st position" interest in any property.

33. Nor did the investments provide investors with limited partnership interests, or any other interests, in the (non-existent) properties.

34. Finally, Fletchers Multi-Family was never registered with or regulated by the Commission.

35. To make the investments appear legitimate, Fletcher documented most of them with a document he sometimes called "Promissory Note Agreement," sometimes "Promissory Note Agreement / Investment Agreement," and other times "Investment Agreement" (collectively, the "Investment Instruments").

36. All Investment Instruments shared key features: (i) a fixed investment amount that varied by investor; (ii) a specified maturity date, with maturities ranging from a few weeks to a year; and (iii) the promise of exorbitant returns, with some Investment Instruments promising returns as high as 80% or more on an annualized basis.

37. Between April 2021 and November 2024 Fletcher raised more than $4.25 million from investors in Fletchers Capital and Fletchers Multi-Family through the issuance and sale of such Investment Instruments.

38. Fletcher told different stories to different investors, but his pitches weaved together certain common themes and misrepresentations related to every aspect of his business and his offerings.

39. Fletcher sometimes referenced supposed specific real estate projects in sales pitches, written offering materials, and/or Investment Instruments. Two examples illustrate Fletcher's typical *modus operandi.*

**Investor A**

40. On or about August 21, 2023, Fletcher sold an investment to Investor A for $75,000, memorializing the investment in writing via a document entitled "Promissory Note/Investment Agreement" that provided that Fletcher would pay Investor A $90,000 no later than August 24, 2024.

41. In the days leading up to the August 21, 2023 investment, Fletcher made several misrepresentations to Investor A in order to induce the investment.

42. Among those misrepresentations, Fletcher told Investor A that he would use her $75,000 for a "6-Unit Container Home Land Development" located at a specific address in southwest Atlanta.

43. Fletcher told Investor A that he expected to reap a profit from the identified development, which would fund the promised return on Investors A's investment.

44. In truth, Fletcher had no connection to any proposed development on the identified property.

45. Nor did he use Investor A's $75,000 for any other real estate development project.

**Investor B**

46. On or about June 20, 2023, Fletcher sold an investment to Investor B for $25,000, memorializing the investment in writing via a document entitled

"Promissory Note/Investment Agreement" that provided that Fletcher would pay Investor B $30,000 no later than October 20, 2023.

47. In the days leading up to the June 20, 2023 investment, Fletcher made several misrepresentations to Investor B in order to induce the investment.

48. Among those misrepresentations, Fletcher told Investor B that he would use the $25,000 as working capital for construction of a new home located on Moreland Avenue in Atlanta, the sale of which would fund the profit promised to Investor B.

49. In truth, Fletcher had no connection with any proposed home construction on the identified property.

50. Nor did he use the $25,000 for any other real estate development project.

**Other Investors**

51. Between at least January and April 2022 , Fletcher centered his scheme around supposed "high-value apartments near the Orlando, Florida tourist corridor."

52. For example, in early 2022, as part of a self-described "real estate arbitrage" strategy, Fletcher represented—both orally and in writing—to some prospective Fletchers Capital investors that their investment proceeds would be used to rent high-value apartments near the Orlando, Florida tourist corridor, which

Fletcher claimed he would then list as short-term rentals (at higher rates) on sites such as VRBO or AirBNB.

53. In April 2022, in connection with soliciting an investor, Fletcher provided a written pitch deck entitled "FLETCHERS CAPITAL Orlando Portfolio Passive Income Investors Overview," which claimed, among other things, that this short-term rental strategy had yielded historical profits of $118,690 from December 2021 through April 2022.

54. That investor and others invested after hearing that sales pitch.

55. In fact, Fletcher had no connection to the Orlando properties identified in his pitch, nor had he generated any profits for investors from the described strategy.

56. Even if he had such a connection, leases of units in that property specifically prohibit renters from using apartments as short-term sub-rentals.

57. A review of the property records for other properties identified by Fletcher in investor pitches reveals the same pattern of deception.

58. Specifically, Fletcher and his businesses had no relationship through ownership, development, or rental, with any of the properties or their actual owners.

**Misuse of Funds**

59. Many of the investors transmitted their investment funds via wire transfers.

60. Instead of using investor funds for their stated purpose, Fletcher used them for personal expenses and to make principal and interest payments to earlier investors.

61. Of the more than $4.25 million that Fletcher raised through his scheme, he used more than $2 million in investor funds for personal expenses. For example, Fletcher:

- withdrew more than $790,000 in cash; and
- made over $1 million in personal payments and transfers to over 300 recipients via Zelle, Apple Cash, and Cash App.

62. In addition, Fletcher spent approximately $40,000 on travel-related expenses, paid over $10,000 on exotic car rentals, and used investor money for other personal expenses, including rent, retail purchases, and car payments.

63. Fletcher also used more than $2 million in investor funds to make Ponzi payments to earlier investors and/or complaining investors to extend the life of his scheme.

**Flecher's Efforts to Conceal His Scheme**

64. When Fletchers Capital and Fletchers Multi-Family defaulted on their payment obligations, Fletcher frequently made excuses to placate investors and seek additional time to make repayment.

65. Among other things, Fletcher falsely blamed payment delays on project delays, purported problems with unrelated properties, and other fabricated concerns.

66. When pressed, Fletcher doubled down. For example, after failing to pay one investor at the maturity date and making multiple excuses, Fletcher produced a letter from a financing company stating that he had secured pre-approval for additional financing against his personal real estate for the supposed multi-home development underlying the investment. When the investor contacted the financing company, however, it informed the investor that the letter issued under its letterhead was fabricated.

**COUNT I—FRAUD**

**Violations of Section 17(a)(1) of the Securities Act**
**[15 U.S.C. § 77q(a)(1)]**

67. Paragraphs 1 through 66 are hereby realleged and incorporated herein by reference.

68. Beginning in or around 2021 and continuing through the present, Defendant, in the offer and sale of the securities described herein, by the use of

means and instruments of transportation and communication in interstate commerce and by use of the mails, directly and indirectly, employed devices, schemes and artifices to defraud purchasers of such securities, all as more particularly described above.

69. Defendant knowingly, intentionally, and/or recklessly engaged in the aforementioned devices, schemes, and artifices to defraud as described above.

70. By reason of the foregoing, Defendant, directly and indirectly, has violated and, unless enjoined, will continue to violate Section 17(a)(1) of the Securities Act [15 U.S.C. § 77q(a)(1)].

## COUNT II—FRAUD

### Violations of Sections 17(a)(2) and 17(a)(3) of the Securities Act [15 U.S.C. §§ 77q(a)(2) and 77q(a)(3)]

71. Paragraphs 1 through 66 are hereby realleged and incorporated herein by reference.

72. Beginning in or around 2021 and continuing through the present, Defendant, acting knowingly, recklessly, or negligently in the offer and sale of the securities described herein, by use of means and instruments of transportation and communication in interstate commerce and by use of the mails, directly and indirectly:

a. obtained money and property by means of untrue statements of material fact and omissions to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading as described above; and

b. engaged in transactions, practices and courses of business which would and did operate as a fraud and deceit upon the purchasers of such securities, all as more particularly described above.

73. By reason of the foregoing, Defendant, directly and indirectly, has violated and, unless enjoined, will continue to violate Sections 17(a)(2) and 17(a)(3) of the Securities Act [15 U.S.C. §§ 77q(a)(2) and 77q(a)(3)].

**COUNT III – FRAUD**

**Violations of Section 10(b) of the Exchange Act**
**and Rule 10b-5 thereunder**
**[15 U.S.C. § 78j(b) and 17 C.F.R. §§ 240.10b-5(a), (b), and (c)]**

74. Paragraphs 1 through 66 are hereby re-alleged and are incorporated herein by reference.

75. Between in or around 2021 and the present, Defendant, in connection with the purchase and sale of securities described herein, by the use of the means and instrumentalities of interstate commerce and by use of the mails, directly and indirectly:

a. employed devices, schemes, and artifices to defraud as described above;

b. made untrue statements of material fact and omitted to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading as described above; and

c. engaged in acts, practices, and courses of business which would and did operate as a fraud and deceit upon the purchasers of such securities, all as more particularly described above.

76. Defendant knowingly, intentionally, and/or recklessly engaged in the aforementioned devices, schemes and artifices to defraud, made untrue statements of material facts and omitted to state material facts, and engaged in fraudulent acts, practices and courses of business.

77. By reason of the foregoing, Defendant, directly and indirectly, has violated and, unless enjoined, will continue to violate Section 10(b) of the Exchange Act [15 U.S.C. § 78j(b)] and Sections (a), (b), and (c) of Rule 10b-5 thereunder [17 C.F.R. §§ 240.10b-5(a), (b), and (c)].

## PRAYER FOR RELIEF

WHEREFORE, the Commission respectfully prays that the Court:

I.

Find that Defendant committed the violations alleged;

II.

Permanently enjoin Defendant and each of his agents, employees, and attorneys, and any other person or entity in active concert or participation with him who receive actual notice of the injunction by personal service or otherwise, from directly or indirectly engaging in conduct in violation of Section 17(a) of the Securities Act [15 U.S.C. § 77q(a)]; Section 10(b) of the Exchange Act and Rule 10b-5 thereunder [15 U.S.C. § 78j(b) and 17 C.F.R. § 240.10b-5] by committing or engaging in specified actions or activities relevant to such violations.

III.

Order Defendant to disgorge all ill-gotten gains in the form of any benefits of any kind derived from the illegal conduct alleged in this complaint, plus pay prejudgment interest thereon, pursuant to Sections 21(d)(3), 21(d)(5) and 21(d)(7) of the Exchange Act [15 U.S.C. §§ 78u(d)(3), 78u(d)(5), and 78u(d)(7)];

IV.

Order Defendant to pay a civil penalty pursuant to Section 20(d) of the Securities Act [15 U.S.C. § 77t(d)] and Section 21(d) of the Exchange Act [15 U.S.C. § 78u(d)] in an amount to be determined by the Court;

V.

Permanently enjoin Defendant from, directly or indirectly, including, but not

limited to, through any entity owned or controlled by him, participating in the issuance, purchase, offer, or sale of any security; provided, however, that such injunction shall not prevent Defendant from purchasing or selling securities for his own personal accounts;

VI.

Retain jurisdiction of this action in accordance with the principles of equity and the Federal Rules of Civil Procedure in order to implement and carry out the terms of all orders and decrees that may be entered, or to entertain any suitable application or motion by the Commission for additional relief within the jurisdiction of this Court; and

VII.

Order such other and further relief as this Court may deem just, equitable, and appropriate in connection with the enforcement of the federal securities laws and for the protection of investors.

**JURY TRIAL DEMAND**

The Commission hereby demands a trial by jury as to all issues that may be so tried.

This 29th day of September, 2026.

Respectfully submitted,

/s/*Pat Huddleston II*
Pat Huddleston II
Senior Trial Counsel
Georgia Bar No. 373984
huddlestonp@sec.gov

M. Graham Loomis
Regional Trial Counsel
Georgia Bar No. 457868
loomism@sec.gov

Attorneys for Plaintiff
Securities and Exchange Commission
950 East Paces Ferry Road, NE, Suite 900
Atlanta, GA 30326
Tel: (404) 842-7616
Facsimile: *4048427679@fax.sec.gov*